# United States Court of Appeals for the Federal Circuit

2008-7051

GREGORY J. EMENAKER,

Claimant-Appellant,

v.

JAMES B. PEAKE, M.D., Secretary of Veterans Affairs,

Respondent-Appellee.

J. Michael Jakes, Finnegan, Henderson, Farabow, Garrett & Dunner, L.L.P., of Washington, DC, argued for claimant-appellant. With him on the brief was Ronald L. Smith. Of counsel was Harold M. Shaw, King & Spalding LLP, of Washington, DC.

Elizabeth A. Holt, Trial Attorney, Commercial Litigation Branch, Civil Division, United States Department of Justice, of Washington, DC, argued for respondent-appellee. With her on the brief were Gregory G. Katsas, Assistant Attorney General, Jeanne E. Davidson, Director, and Martin F. Hockey, Jr., Assistant Director. Of counsel was Brian T. Edmunds, Trial Attorney. Of counsel on the brief were Ethan Kalett, Supervisory Attorney, and Michael G. Daugherty, Attorney, Office of the General Counsel, United States Department of Veterans Affairs, of Washington, DC.

Appealed from: United States Court of Appeals for Veterans Claims

Judge William A. Moorman

# United States Court of Appeals for the Federal Circuit

2008-7051

GREGORY J. EMENAKER,

Claimant-Appellant,

v.

JAMES B. PEAKE, M.D., Secretary of Veterans Affairs,

Respondent-Appellee.

Appeal from the United States Court of Appeals for Veterans Claims in 05-3169, Judge William A. Moorman.

_____

DECIDED:  December 31, 2008

_____

Before SCHALL, FRIEDMAN, and BRYSON, Circuit Judges.

BRYSON, Circuit Judge.

Gregory J. Emenaker, a veteran, appeals from a decision of the United States Court of Appeals for Veterans Claims ("the Veterans Court"), which denied his request for benefits attributable to a service connected disability stemming from a neurological disorder.  Mr. Emenaker argues that the Veterans Court misinterpreted the statutory presumption of sound condition accorded to veterans, 38 U.S.C. § 1111, and the regulation that implements that presumption, 38 C.F.R. § 3.304(b).  Because we hold that the argument Mr. Emenaker presents to us has not been properly preserved for appeal, we affirm.

Mr. Emenaker served on active duty in the United States Navy from October 1974 to October 1994. In-service medical records reflected that he suffered from slight weakness on the left side of his body. CT imaging conducted during his service revealed subtle changes in the right hemisphere of his brain, which led the examining physician to conclude that Mr. Emenaker suffered from brain atrophy and weakness of the left upper and lower extremities secondary to a traumatic brain injury that he experienced as a child.

In December 1994, after his retirement, Mr. Emenaker filed a claim for service connection for several conditions, including atrophy of the right cerebral hemisphere and a resulting weakness on the left side of his body. A regional office of the Department of Veterans Affairs ("DVA") granted Mr. Emenaker's claim of service connection for an in-service fracture of his left shoulder, but denied service connection for his brain injury and left side weakness on the ground that the condition originated prior to service and had not been aggravated during service. On appeal, the Board of Veterans' Appeals determined that the regional office had improperly relied on its own assessment of the medical evidence and that there had been "no professional medical opinion regarding whether the veteran's disorder was aggravated by service." The Board remanded the case to the regional office in April 1999 to determine, among other things, "whether there is evidence of aggravation in service beyond natural progress pursuant to 38 C.F.R. §§ 3.304(b), 3.306." The regional office arranged for an independent medical examination of Mr. Emenaker, which was conducted by Dr. Patrick Kilhenny in July 2000.

Following that examination, Dr. Kilhenny prepared a report in which he noted that Mr. Emenaker's left-side weakness had previously been traced to a motor vehicle accident that occurred when Mr. Emenaker was five years old. Mr. Emenaker reported that the accident left him in a coma for some time and required speech therapy thereafter. Dr. Kilhenny concluded that Mr. Emenaker "has had a gradual increasing weakness on the left side of his body for approximately ten years time," and that although he "does not have a primary motor neuron disease," he had "an old encephalomalacia [softening of the brain tissue] seen on his MRI with resultant left hemiparesis [weakening of the left side of the body] which I would describe as mild." Dr. Kilhenny further concluded that Mr. Emenaker's symptoms "are secondary to his childhood accident and do not represent evidence of a new neurologic entity." He added that "[o]ccasionally, head injured patients can have a slight worsening of their symptoms with age and this is due to the normal dying off phenomenon of neurons which can bring out a weakness later in life." Based on that report, the regional office issued a Supplemental Statement of the Case, again denying Mr. Emenaker's application for benefits. Subsequently, and at the request of the regional office, Dr. Kilhenny provided an addendum to his report, in which he stated:

> It is my professional opinion, that it is at least as likely as not,
> a) that this veteran's disorder pre-existed entrance into the military service.
> b) the veteran underwent a normal progression, during service; age related changes.
> c) The increase was normal, age related loss; not job related.

The regional office then prepared another Supplemental Statement of the Case, again denying Mr. Emenaker's claim. The Board of Veterans' Appeals affirmed that decision in January 2002. The Board found that "while the evidence does establish that

there was a permanent increase in severity of the veteran's preexisting disability during service, the evidence also clearly and unmistakably establishes that this increase was due to the natural progress of that disability."  Accordingly, the Board concluded that Mr. Emenaker's preexisting disability was not aggravated as a result of his military service.

The Veterans Court vacated that decision in April 2005.  The court focused on the "at least as likely as not" language in Dr. Kilhenny's supplemental statement and ruled that the Board had failed to explain adequately how that statement could satisfy the requirement of clear and unmistakable evidence needed to rebut the presumption of aggravation under 38 U.S.C. § 1111 and 38 C.F.R. § 3.304.  The court stated that the Board "must fully and adequately explain whether the opinion rises to the level of clear-and-unmistakable evidence despite the use of the seemingly equivocal phrase 'at least as likely as not.'"

On remand, the Board in a 2005 opinion explained that Dr. Kilhenny's statement was responding to questions set forth in the Board's 1999 opinion, in which the Board had specifically directed him "to provide an opinion as to whether it is at least as likely as not that: a) the disorder pre-existed entrance into military service; b) if so, did it undergo an increase in severity during service; c) if so, was any such increase beyond the natural progress of the disease."  The Board in its 2005 opinion then added:

> We recognize that the rubric "at least as likely as not" is not, taken alone, strictly equivalent to "clear and unmistakable evidence."  However, the neurological examiner's addendum followed up on his detailed and comprehensive examination report, which described the veteran's pre-service and in-service history, and his present condition.  Based upon a careful reading of the examiner's initial report and subsequent addendum, the Board believes the opinion is unequivocal in concluding that the increase in the veteran's symptomatology in service represented an expected and normal progression due to the aging process.

Based on that assessment, the Board concluded that the record contained clear and unmistakable evidence that the increase in severity of Mr. Emenaker's symptoms was due to the natural progression of a preservice condition. Accordingly, the Board denied his claim. Mr. Emenaker appealed that decision to the Veterans Court. After assessing the Board's explanation of Dr. Kilhenny's statement, the court concluded that the language he used "is not fatal to his opinion." The court then affirmed the Board's decision denying service connection for Mr. Emenaker's condition, and Mr. Emenaker appealed to this court.

II

Mr. Emenaker's legal argument on appeal relates to the statutory presumption that a veteran was in sound condition when enrolled for service, which can be overcome only by clear and unmistakable evidence that the veteran's disability was both pre-existing and not aggravated by service. 38 U.S.C. § 1111; see Wagner v. Principi, 370 F.3d 1089, 1096 (Fed. Cir. 2004). Mr. Emenaker concedes that his condition originated prior to his entry into military service. As a result, his challenge focuses on whether his condition was aggravated by service. As to that issue, he contends that the statutory presumption of aggravation, which applies whenever a pre-service disability increases in severity during service, cannot be rebutted by medical judgment alone, and that the presumption should not have been held to be rebutted in his case by a single medical professional's opinion.

Mr. Emenaker relies on the statute that sets forth the presumption of soundness, as well as the statute's implementing regulation. Mr. Emenaker's statutory argument depends on a comparison between 38 U.S.C. § 1111, which creates the soundness

2008-7051                                          5

presumption applicable to veterans (such as Mr. Emenaker) who served during wartime, and 38 U.S.C. § 1132, which creates an analogous presumption applicable to veterans of peacetime service.[1]  Pointing to the difference in language between the two statutes, Mr. Emenaker argues that Congress intentionally removed language stating that the soundness presumption may be rebutted by "evidence, or medical judgment" from section 1111 while retaining that language in section 1132.  The purpose of creating that difference between the two statutes, according to Mr. Emenaker, was to ensure that for veterans covered by section 1111, medical judgment alone could not serve to rebut the soundness presumption.  In addition, Mr. Emenaker relies on the regulation that implements section 1111, which states in pertinent part that determinations as to whether the presumption of soundness has been rebutted "should not be based on medical judgment alone as distinguished from accepted medical principles . . . ."  38 C.F.R. § 3.304(b)(1).  Mr. Emenaker concludes that the government improperly made the dispositive finding in his case—that his brain atrophy was not aggravated by a service connection—by relying solely on Dr. Kilhenny's medical judgment, and that doing so constituted legal error.

The government agrees with Mr. Emenaker that in light of the regulation, medical judgment alone cannot overcome the presumption of soundness in 38 U.S.C. § 1111.  However, the government contends that the DVA may rely on "medical opinion or medical evidence," which is not reliance on "medical judgment alone," and that the DVA properly did so in this case.

---

[1]     Although the two statutes purport to create different rules for the two classes of veterans, the DVA's regulations effectively apply the wartime standard to nearly all veterans, including all "peacetime" veterans whose service postdates 1946.

Section 3.304(b)(1) of the DVA regulation does not make clear exactly what is contemplated by the term "medical judgment." However, section 3.304(b)(2) explains that in determining whether the section 1111 presumption has been overcome, the DVA is free to consider "[h]istory conforming to accepted medical principles," "basic clinical data," "accepted medical and evidentiary principles," "accepted medical evidence relating to incurrence, symptoms and course of the injury or disease," "official and other records made prior to, during or subsequent to service," and "all other lay and medical evidence concerning the inception, development and manifestations of the particular condition." 38 C.F.R. § 3.304(b)(2).

In Harris v. West, 203 F.3d 1347 (Fed. Cir. 2000), we emphasized the breadth of that regulatory provision. The veteran in that case challenged the denial of service connection based on the legal argument that the presumption of soundness may be rebutted only by contemporaneous evidence, as opposed to a medical professional's after-the-fact assessment. We held that there is no such requirement. To the contrary, we stated that the statute "says nothing about the kind of evidence that can be used to rebut the presumption." Id. at 1349. We added that the regulation provides that "[h]istory conforming to accepted medical principles should be given due consideration, in conjunction with basic clinical data, and be accorded probative value consistent with accepted medical and evidentiary principles . . . ." Id. at 1350 (quoting from 38 C.F.R. § 3.304(b)(2)). We interpreted that direction to mean that "the finder of fact should consider all medically accepted evidence bearing on whether the service member was suffering from the disease or injury in question prior to induction." Id. Although we emphasized that the regulation provides broad authorization as to the kinds of evidence

that the DVA may consider in determining whether the presumption of soundness has been overcome, we had no occasion to address the meaning of the regulatory prohibition against the use of "medical judgment alone as distinguished from accepted medical principles." 38 C.F.R. § 3.304(b)(1). That issue, which Mr. Emenaker seeks to raise here, was thus not addressed or resolved in Harris.

Mr. Emenaker argues that there is a meaningful difference between medical principles and medical judgment. He argues that a case "in which a physician concludes that accepted medical principles compel the conclusion that an injury or disease preexisted service is fundamentally different from one in which the physician offers only his personal opinion. The former is not, while the latter is, mere medical judgment." Mr. Emenaker contends that "a private physician's opinion is no more than medical judgment alone." For the reasons explained below, however, we conclude that Mr. Emenaker did not raise that argument in a way that preserved the issue for review here. We therefore do not reach the merits of his claim that the DVA improperly relied on "medical judgment alone" in finding that the presumption of soundness was rebutted.

III

In order to present a legal issue in a veteran's appeal, the appellant ordinarily must raise the issue properly before the Veterans Court; with limited exceptions, appellate courts do not consider issues that were not raised in the tribunal from which the appeal is taken, and we have held that those general principles of appellate practice apply in the context of appeals from the Veterans Court. See Forshey v. Principi, 284 F.3d 1335, 1355 (Fed. Cir. 2002) (en banc). While the requirement that an issue be preserved for appeal "does not demand the incantation of particular words, it requires

that the lower court be fairly put on notice as to the substance of the issue." <u>Nelson v. Adams USA, Inc.</u>, 529 U.S. 460, 469 (2000).

As noted, Mr. Emenaker argues in this court that a physician's opinion alone is insufficient to rebut the presumption of soundness in 38 U.S.C. §1111. In his brief before the Veterans Court, however, Mr. Emenaker made a different argument. He argued that Dr. Kilhenny's opinion was insufficient to rebut the presumption of soundness because Dr. Kilhenny expressed his opinion by using the expression "at least as likely as not." Those two arguments plainly do not embody the same concept.

It is not surprising that Mr. Emenaker focused on the question whether the "at least as likely as not" language in Dr. Kilhenny's opinion could rise to the level of clear and unmistakable evidence required to rebut a presumption of aggravation, as that had been the issue on which the Veterans Court had previously remanded the case to the Board. When the Veterans Court first dealt with the case, that court had specifically determined that the Board "also failed to explain how the 'at least as likely as not' language in Dr. Kilhenny's report could rise to the level of clear-and-unmistakable evidence," and it had directed that "if the Board again relies on Dr. Kilhenny's opinion, it must fully and adequately explain whether the opinion rises to the level of clear-and-unmistakable evidence despite the use of the seemingly equivocal phrase 'at least as likely as not.'" When the Board reconsidered that issue, it responded to the Veterans Court's concern that Dr. Kilhenny's use of the "at least as likely as not" language was indicative of something less than clear and unmistakable evidence by stating, "We recognize that the rubric 'at least as likely as not' is not, taken alone, strictly equivalent to 'clear and unmistakable evidence.'" It is therefore not surprising that when Mr.

Emenaker chose to again appeal to the Veterans Court, he elected to focus on that very issue.

Mr. Emenaker's brief before the Veterans Court represented that he was raising only a single issue: "The Board's decision fails to explain how Dr. Kilhenny's opinion can be deemed undebatable in light of his use of 'at least as likely as not.'" Mr. Emenaker then succinctly explained his position as follows: "The Board's finding is founded on Dr. Kilhenny's opinion. That opinion fails to satisfy the onerous clear and unmistakable evidence standard because it is expressed in terms of 'at least as likely as not.'" Mr. Emenaker now asks that we look to a single, broadly worded expression of his argument to conclude that he had in fact been challenging Dr. Kilhenny's opinion as a "medical judgment" that was barred from consideration by the Board. In his brief, Mr. Emenaker stated, "Dr. Kilhenny's opinion is insufficient as a matter of law to satisfy the clear and unmistakable evidence standard." It is clear, however, that when he made that statement in his opening brief before the Veterans Court, Mr. Emenaker was attacking the sufficiency of the medical evidence, not because it consisted of a medical judgment but because the language of Dr. Kilhenny's medical opinion appeared to be equivocal. Later in the brief, Mr. Emenaker spelled out that point with more specificity:

> Had Dr. Kilhenny's opinion been clear and unmistakable, i.e., undebatable, then he would have simply omitted the "it is at least as likely as not" language and the report would have read: It is my professional opinion that the veteran underwent a normal progression, during service; age related changes. Rather than express his opinion in such an unequivocal manner, Dr. Kilhenny included the qualifying phrase "at least as likely as not."

A reasonable inference from that argument is that if Dr. Kilhenny had expressed his opinion without the purportedly offending language, Mr. Emenaker would have had no cause to complain.

It was not until his reply brief before the Veterans Court that Mr. Emenaker contended for the first time that Dr. Kilhenny's opinion was insufficient to rebut the presumption of soundness because it was a "medical judgment," the argument that he now makes before this court. As he stated in his reply brief, "medical judgment evidence standing alone is legally insufficient to rebut the § 1111 presumption of soundness."

It is clear that Mr. Emenaker's later argument is not the same as his prior one. While Mr. Emenaker's argument in his opening brief raised a question of whether Dr. Kilhenny's medical opinion was sufficiently unqualified to satisfy the "clear and unequivocal evidence" standard, the argument in his reply brief was that no medical opinion can be sufficient to overcome the presumption of aggravation, which is a distinctly different claim. The different character of the two arguments is underscored by the fact that we would have jurisdiction over the second claim, but not the first. While the claim Mr. Emenaker now presents to this court is purely legal, the claim he presented to the Veterans Court in his opening brief would be beyond our jurisdictional reach on appeal as "a challenge to a factual determination" or "a challenge to a law or regulation as applied to the facts of a particular case." 38 U.S.C. § 7292(d)(2).

As we noted in Carbino v. West, 168 F.3d 32, 34-35 (Fed. Cir. 1999), the Veterans Court is not required to consider an appellant's argument that is made for the first time in a reply brief in that court. In this case, the Veterans Court did not address

the "medical judgment" argument made by Mr. Emenaker for the first time in his reply brief, and for those reasons, we consider that argument waived.

In light of the somewhat confusing language used in the regulation, the issue that Mr. Emenaker seeks to present to us is a potentially significant one; it appears, moreover, to be one that neither the Veterans Court nor this court has squarely addressed.[2]  It certainly was not addressed by the Veterans Court in this case, for the reasons we have explained.  And because it would be imprudent for us to address the issue without the benefit of its having been properly presented to, and decided by, the Veterans Court, we decline to address the issue in the first instance.

No costs.

AFFIRMED.

---

[2]     This court's predecessor addressed similar regulatory language in an Army regulation dealing with disability retirement, see Reese v. United States, 180 Ct. Cl. 932 (1967); Siegel v. United States, 148 Ct. Cl. 420 (1960), and a judge of the Veterans Court has addressed the argument raised by Mr. Emenaker in a separate opinion, see Jordan v. Principi, 17 Vet. App. 261 (2003) (Steinberg, J., separate views).  Those cases may provide some guidance in any future consideration of the regulatory language by the Veterans Court.